UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Local 13 International Alliance of
Theatrical Stage Employees, and
Motion Picture Machine Operators
of the United States and Canada, AFL-CIO,

Plaintiff,

v.

Civ. No. 01-1915 (JEL/JGL)
ORDER

SFX Target Center Arena Management, L.L.C.,

Defendant.

---

Duane G. Johnson, Esq., Johnson Law Office, appeared for Plaintiff Local 13 International Alliance of Theatrical Stage Employees, and Motion Picture Machine Operators of the United States and Canada, AFL-CIO.

Andrew M. Herzig, Esq., Akin Gump Strauss Hauer & Feld, LLP, appeared for Defendant SFX Target Center Arena Management, L.L.C.

---

The International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators of the United States and Canada, Local No. 13, AFL-CIO (Local 13) brought this action against SFX Target Center Arena Management, L.L.C. (SFX) to compel SFX to arbitrate a labor dispute. The matter is before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court grants SFX's Motion for Summary Judgment.

## I. SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this action pursuant to 29 U.S.C. § 185 (2000).

## II. BACKGROUND

Ogden Entertainment Services, Inc. (Ogden) managed the Target Center, an arena in downtown Minneapolis, Minnesota, from 1990 to 2000. Pursuant to collective bargaining

FILED JAN 2 2 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED JAN 2 2 2003
DEPUTY CLERK'S INITIALS

agreements executed by Local 13 and Ogden, Local 13 provided stagehands for events throughout Ogden's management of the arena. The most recent collective bargaining agreement between Ogden and Local 13 (Ogden Agreement) included a conditional termination clause:

> This Agreement shall become effective and remain in full force and effect from the 3rd day of March, 1997 to the 2nd day of March, 2000 and from year to year thereafter unless and until either party gives to the other party a written notice sixty (60) days prior to March 2, 2000 or any subsequent calendar year of a desire to amend, modify or terminate this agreement.

By letter of December 28, 1999, Ogden notified Local 13 of its desire to "amend, modify or terminate" the Ogden Agreement, and expressed its willingness to negotiate a new collective bargaining agreement with Local 13. Shortly thereafter, but before March 2, 2000, Ogden's manager, Jack Larson, asked Local 13 to "hold off" on negotiations because Ogden was negotiating a sale of its arena lease. Larson told Local 13's business representative, Matt Rice, that "we'll just remain under the conditions of this contract." In 2000, Aramark Entertainment, Inc. acquired Ogden. Later that year, SFX assumed the arena lease. Negotiations for a new collective bargaining agreement with Local 13 were postponed during the negotiations regarding the arena lease.

In a letter dated September 18, 2000, SFX informed Local 13 that it had entered a contract to assume the arena lease. The letter stated in part:

> [SFX] has entered into a contract to assume the management of the Target Center on September 21, 2000. [SFX] will need to hire personnel to perform stagehand work at the arena, and it is interested in negotiating a collective bargaining agreement with your union. We will consider and respond to any contract proposals that you offer. In the meantime, we will continue to look to your organization for stagehands to perform work at the Target Center. This letter sets forth the terms and conditions of employment under which [SFX] will hire such stagehands.
>
> ....
>
> [SFX] will hire and utilize such stagehands only when [SFX] decides that it is necessary. In other words, [SFX] will not ask your organization to supply the stagehands in every instance that any of the work described above is to be performed.
>
> When [SFX] does hire your members to perform work at the Target Center, that work will be performed under the terms and conditions of employment set forth

> in the Union's expired collective bargaining agreement with Ogden [the Ogden Agreement], as clarified by this letter.

SFX and Local 13 were still negotiating a new collective bargaining agreement when the Court heard argument on their motions in September 2002.

While SFX and Local 13 negotiated, a dispute arose regarding alleged misconduct by Darren Ostertag, a member of Local 13, at a Target Center show in March 2001. SFX wrote to Local 13 that "Target Center will reject Darren Ostertag should he be referred for future employment here." By letter of May 21, 2001, Local 13 asked SFX to arbitrate the decision to reject Ostertag. After SFX refused, Local 13 brought this action to compel SFX to arbitrate. Local 13 argues that SFX must arbitrate the Ostertag dispute because: (1) SFX is bound to arbitrate as a successor employer under the Ogden Agreement; (2) SFX and Local 13 entered an interim agreement that requires SFX to arbitrate; and (3) SFX is estopped from denying its obligation to arbitrate.

## III. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate,

a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A. Ogden Agreement**

Local 13 argues that Ogden revoked its termination of the Ogden Agreement, and that the Ogden Agreement therefore remained in effect "from year to year." Because the Ogden Agreement provides that it "shall be binding upon the parties hereto and upon the successors or assignees of the parties hereto," Local 13 maintains that SFX, as a successor employer, is bound to arbitrate under the Ogden Agreement. SFX contends that the Ogden Agreement expired several months before SFX took over the management of the Target Center. Because the alleged misconduct by Ostertag took place after the Ogden Agreement expired, SFX asserts that it has no obligation to arbitrate.

There is no dispute that Ogden provided Local 13 with notice of its intent to terminate the Ogden Agreement in its letter of December 28, 1999. The Ogden Agreement therefore expired on March 2, 2000, unless Ogden revoked its notice of termination. Local 13 relies on statements made by Larson to Rice between December 28, 1999, and March 2, 2000, to argue that Ogden revoked its notice of termination. There is no dispute that Larson asked Rice to "hold off" on negotiations for a new collective bargaining agreement, and that Larson told Rice "we'll just remain under the conditions of this contract." In light of the federal labor law policy favoring arbitration, *see John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548-51 (1964), Local 13 contends that Larson's statements revoked Ogden's termination. Such an inference is not warranted. Instead, Larson merely asked Local 13 to suspend negotiations while Ogden negotiated a sale of its arena lease and acknowledged Ogden's legal duty to maintain the conditions of the Ogden Agreement upon its expiration, *see United Paperworkers Int'l Union, Local 274 v. Champion Int'l Corp.*, 81 F.3d 798, 801-02 (8th Cir. 1996) ("After a [collective bargaining agreement] has expired, [the National Labor

Relations Act] requires that the employer maintain the *status quo*, that is, the terms of the expired contract, during negotiations for a new agreement."). Because Ogden did not revoke its termination, the Ogden Agreement expired on March 2, 2000.

In the absence of an agreement to submit a dispute to arbitration, a party cannot be compelled to do so. *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986); *Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1403 (8th Cir. 1986). The duty to arbitrate a grievance will survive the expiration of a collective bargaining agreement that contains an arbitration clause if the grievance involves "rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate[s] to events which have occurred at least in part while the agreement was still in effect." *C.R.S.T.*, 795 F.2d at1403-04; *see Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991). The Ogden Agreement expired approximately one year before Ostertag's alleged misconduct. The Ogden Agreement therefore does not require SFX to arbitrate the Ostertag dispute.

**B. Interim agreement**

Section 301 of the Labor Management Relations Act (LMRA) grants federal district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a); *see Champion Int'l*, 81 F.3d at 802. Section 301 jurisdiction encompasses suits involving interim agreements reached while an employer and a union negotiate a collective bargaining agreement. *Champion Int'l*, 81 F.3d at 802-03. The parties dispute whether they entered such an agreement.

The relevant facts are not in dispute. In its September 18, 2000, letter to Local 13, SFX expressed its interest in negotiating a collective bargaining agreement with the union and agreed to hire Local 13 members under the terms of the Ogden Agreement, as clarified by the letter. By letter

of October 23, 2000, SFX provided Local 13 with a proposed collective bargaining agreement, "a 'red-lined' document that compares the expired agreement to the terms and conditions that are currently in effect," and "a 'red-lined' document that compares SFX's proposal to the terms and conditions of employment that are currently in effect." SFX's proposal included the same grievance procedure and arbitration article that appeared in the union's collective bargaining agreements with Ogden, and the two red-lined documents included the article among the conditions "currently in effect." Throughout Local 13's tenure at the Target Center, management never proposed changes to the article. Local 13 has negotiated with SFX without engaging in any economic action against SFX.

The parties dispute the applicable legal standard to determine whether these facts establish the existence of an interim agreement. Local 13 relies on *Taft Broadcasting Co. v. NLRB*, 441 F.2d 1382 (8th Cir. 1971), which affirmed the National Labor Relation Board's (NLRB) conclusion that an employer and a union had entered an interim agreement:

> It is to be borne in mind that, as earlier stated, a grievance procedure that included arbitration had been contained in the [expired collective bargaining agreement], was tendered in the [employer's final proposal for a new collective bargaining agreement], and had never been a matter in issue. After an extended period of time without any contract, during which interval there had been a prolonged strike, the parties saw an attempted resolution of their differences come to nought when [the employer] withdrew its [final proposal] in its ... letter. In this context the letter can properly be regarded as offering, at the same time, to continue, at least for a while, certain practices. *While in one breath [the employer] asserts that the letter could not ripen into a contract unless the union formally accepted it, in the next it says, quite correctly that 'the letter calls for no response on the union's part, either by action or reply.' Although [the employer] would draw different conclusions from this fact, we conclude that the [NLRB] could properly find that the union's inaction was, contractually, just what was called for.*

*Id.* at 1385 (emphasis added). SFX attempts to distinguish *Taft Broadcasting* because it involved an appeal from the NLRB's determination that the employer committed an unfair labor practice whereas Local 13 brought this action against SFX under section 301. The Court does not find this

distinction persuasive. *See Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 U.S. 249, 256 (1974) (stating "[i]t would be plainly inconsistent ... to say that the basic policies found controlling in an unfair labor practice context may be disregarded by the courts in a suit under § 301"). The quoted language from *Taft Broadcasting* belies SFX's contention that the case did not address the formation of an interim agreement. *See also C.R.S.T.*, 795 F.2d at 1405 ("In [*Taft Broadcasting*] we held that this letter gave rise to an interim agreement to arbitrate grievances.").

Nevertheless, Local 13's reliance on *Taft Broadcasting* is misplaced because of the Eighth Circuit's subsequent decision in *Champion International*, which adopted a more rigorous standard to determine whether an employer and a union entered an interim agreement. *Champion International* explained:

> [P]roof of an interim agreement requires not only evidence of the employer's intent to make an offer, *but also evidence of the union's intent to accept that offer over and above the fact that union members continued to work.* Unilaterally imposed terms may form the basis of an interim agreement. The employer may make such an offer, for example, because the union has threatened economic reprisal. The union may accept the proposal because it wishes to avoid a strike or lockout while attempting to bargain out of impasse. And because an interim agreement is by definition informal, the union's acceptance need not be formal or even express. But the evidence of offer and acceptance must relate to the union-employer bargaining relationship to prove that a § 301 contract was formed. *Thus, the fact that the employer announced unilateral changes is not sufficient evidence of an interim agreement offer. And the fact that the employees continued to work is not sufficient evidence of union intent to accept an offered interim agreement.*

81 F.3d at 803-04 (emphasis added) (citation omitted).

Local 13 interprets *Champion International* to apply only when an employer and a union have negotiated to impasse. As a factual matter, Local 13 is correct that the negotiations in that case had reached impasse. *Id.* at 802. That SFX and Local 13 did not negotiate to impasse, however, does not effectively distinguish *Champion International*. Just as an employer is free to unilaterally impose conditions of employment after bargaining to impasse, *id.* at 803, a successor employer is

generally free to set the initial terms under which it will hire the employees of its predecessor, *NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 294 (1972). The Court therefore concludes that *Champion International* articulates the standard to determine whether SFX and Local 13 entered an interim agreement.

Although unilaterally implemented terms may form the basis of an interim agreement, the Court does not discern an intent to offer an interim agreement in SFX's letters of September 18 and October 23. SFX did not send the letters in response to threatened economic reprisal by Local 13. According to Rice, Local 13 wanted "to avoid any kind of an action and try to come to a settlement." SFX was a new employer that sent the letters to establish the conditions of employment in anticipation of the execution of a new collective bargaining agreement. SFX's letters are not sufficient evidence of an interim agreement offer, *see Champion Int'l*, 81 F.3d at 803-04, and the record does not contain the "affirmative evidence" necessary to prove SFX's intent to offer an interim agreement. *Cf. id.* at 804 n.2 ("[W]hen one party unilaterally changes or repudiates the terms of a terminated CBA ... more affirmative evidence is required to prove intent to enter into an enforceable § 301 interim agreement."). The Court therefore concludes that SFX did not offer an interim agreement to Local 13.

Similarly, there is no evidence of Local 13's intent to accept SFX's purported offer. Local 13 contends that it accepted the "offer" by not engaging in any economic action against SFX and by negotiating a new collective bargaining agreement with SFX. As stated above, "the fact that the employees continued to work is not sufficient evidence of union intent to accept an offered interim agreement." *Id.* at 804. Although a union may accept a proposed interim agreement "because it wishes to avoid a strike or lockout while attempting to bargain out of the impasse," *id.* at 803, Local 13 and SFX had not reached impasse when SFX sent the letters to the union. In fact, Local 13 and

SFX had scarcely begun to negotiate when SFX sent the letters. SFX's alleged acceptance is insufficient. The Court therefore concludes that the parties did not enter an interim agreement because there was neither an offer nor an acceptance of such an agreement.

**C. Estoppel**

Local 13, relying on the same undisputed facts set forth in the section analyzing whether the parties entered an interim agreement, argues that the doctrine of equitable estoppel precludes SFX from denying that it has a duty to arbitrate the Ostertag dispute. SFX argues that neither promissory estoppel nor equitable estoppel requires it to arbitrate. The Court will first discuss promissory estoppel.

As already noted, section 301 jurisdiction encompasses claims for violations of contracts between an employer and a labor organization representing employees. The effect of the doctrine of promissory estoppel is to imply a contract in law where none exists in fact. *Ruzicka v. Conde Naste Publications, Inc.*, 939 F.2d 578, 582 (8th Cir. 1991). Notwithstanding SFX's contention that promissory estoppel is preempted by section 301 because it is a creation of state law, at least one federal court of appeals recognizes promissory estoppel as part of the federal common law of contract under the LMRA. *Anderson v. AT&T Corp.*, 147 F.3d 467, 477 (6th Cir. 1998) (dictum); *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987). Whether promissory estoppel is available to imply a section 301 contract appears to be an open question in the Eighth Circuit. For purposes of deciding this motion, the Court assumes that Local 13 may establish a section 301 contract by promissory estoppel. To do so, Local 13 must demonstrate:

> (1) conduct or language amounting to a representation of material facts; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on or act such that the party asserting the estoppel has a right to believe it so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

*Apponi*, 809 F.2d at 1217.

The record does not support Local 13's contention that it relied on SFX's representations that the arbitration article remained in effect when the union decided to forego economic action against and to participate in negotiations with SFX. At his deposition, Rice admitted that Local 13's decision to forego economic action against SFX was *not* motivated by SFX's representations that the conditions of employment included an arbitration procedure. Rather, this decision resulted from the union's desire to resolve its differences with SFX through negotiations.[1] Local 13's claim that its participation in negotiations demonstrated its reliance is also unavailing. Local 13 had a duty to negotiate with SFX, *see* 29 U.S.C. § 158(b)(3) (2000), and Rice's deposition testimony reveals that the union preferred negotiations to economic action. Local 13 therefore cannot use promissory estoppel to compel SFX to arbitrate.

Local 13 fares no better under the doctrine of equitable estoppel. "Equitable estoppel prevents a party from denying a state of facts that he has previously asserted to be true if the party to whom the representation was made has acted in reliance on the representation and will be prejudiced by its repudiation." *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987).

---

[1] The following exchange took place at Rice's deposition:

Q. Returning to something we discussed briefly before, as you indicated, [Local 13] has not gone on strike against [SFX], has not engaged in any other kind of economic action against [SFX] to date, correct?
A. Correct.
Q. And what was the reason that the union has not engaged in such activity?
A. We hope to resolve our differences through collective bargaining.
Q. Was it in reliance on a promise to arbitrate grievances?
A. Sorry, say that again.
Q. Were you not striking because you were relying on a perceived promise to arbitrate grievances?
A. No.

Assuming *arguendo* that the Court could compel SFX to arbitrate based on equitable estoppel, Local 13's failure to establish that it relied on the representations precludes its resort to equitable estoppel.

## IV. CONCLUSION

Therefore, IT IS ORDERED THAT:

1. Plaintiff Local 13's Motion for Summary Judgment [Docket No. 18] is DENIED.

2. Defendant SFX's Motion for Summary Judgment [Docket No. 12] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 22, 2003

JOAN ERICKSEN LANCASTER
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*